IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WALTER SHANE LANGSTON,

       Plaintiff,                     No. 2:10-cv-3191 KJN P

    vs.

WARDEN JAMES HARTLEY,
SGT. CRUZ, et al.,

       Defendants.            <u>ORDER</u>

_____/

I.  <u>Introduction</u>

        Plaintiff is a state prisoner proceeding without counsel and in forma pauperis. Plaintiff consented to proceed before the undersigned for all purposes.  <u>See</u> 28 U.S.C. § 636(c). Pursuant to court order, plaintiff's amended complaint is now before the court.  As set forth more fully below, plaintiff's amended complaint is dismissed, and plaintiff is granted leave to file a second amended complaint.

II.  <u>Screening Standards</u>

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

////

1   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

2   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

3   granted, or that seek monetary relief from a defendant who is immune from such relief.  28

4   U.S.C. § 1915A(b)(1),(2).

5          The court is required to screen complaints brought by prisoners seeking relief

6   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

7   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

8   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

9   granted, or that seek monetary relief from a defendant who is immune from such relief.

10  28 U.S.C. § 1915A(b)(1),(2).

11         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

12  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

13  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

14  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

15  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

16  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

17  Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

18  2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably

19  meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

20  1227.

21         Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

22  plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

23  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic

24  Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

25  (1957)).  In order to survive dismissal for failure to state a claim, a complaint must contain more

26  than "a formulaic recitation of the elements of a cause of action;" it must contain factual

2

allegations sufficient "to raise a right to relief above the speculative level."  Id.  However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal quotations marks omitted).  In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question,  id., and construe the pleading in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

III.  Pleading Defects

Rather than use the court's form complaint, as plaintiff did in filing his original complaint, plaintiff handwrote the amended complaint.  This resulted in a failure to include information critical to plaintiff's case.

First, plaintiff's filing begins with three pages initially labeled "Amendment Complaint," but without a caption.  (Dkt. No. 15 at 1-3.)  The third page is followed by what appears to be the first page of an amended complaint, with a caption, entitled "Amendment."  (Dkt. No. 15 at 4.)

Second, this filing is confusing because plaintiff used inconsistent page numbering.  Plaintiff began paginating anew on the page containing a caption, but after the page marked "(5) five," plaintiff uses page "(1) one" on the following page.  In addition, it appears plaintiff intended to include a page six, because the last sentence on page five is incomplete, and does not continue on the following page marked "(1) one."

Third, the amended complaint does not include a section identifying individuals as defendants.  Page four identifies Warden James Hartley as a defendant in the caption, followed by "et al.," which suggests plaintiff intended to name other individuals as defendants.  Liberally construed, it appears plaintiff intended to name Warden Hartley and Sgt. Cruz as defendants because these are the only two individuals identified by name in the filing.  But the plural

reference in the caption makes it difficult to confirm that plaintiff intended to sue Hartley and Cruz.  Plaintiff is advised that he must clearly identify the individuals he intends to name as defendants.

Fourth, plaintiff does not articulate what relief he seeks; in the original complaint, plaintiff sought compensatory and punitive damages.  (Dkt. No. 1 at 3.)

As set forth more fully below, plaintiff is granted leave to file a second amended complaint.  While plaintiff may append handwritten facts and claims to the court's complaint form, plaintiff should use the court's complaint form to ensure all necessary information is clearly provided.

IV.  Plaintiff's Claims

A.  Interference with Pending Criminal Proceedings

Plaintiff renews his claim that defendants impeded plaintiff's access to the courts by failing to ensure plaintiff's legal materials were forwarded to plaintiff at the Sacramento County Jail after plaintiff's conviction was reversed, thus depriving plaintiff of his right of access to the courts, and to represent himself in criminal proceedings, in violation of the Sixth Amendment.

In People v. Langston, 2009 WL 245025 (Cal. App. 3 Dist. Aug. 10, 2009), the Court of Appeal found that plaintiff's 2008 criminal conviction must be reversed, and plaintiff be allowed to withdraw his plea inasmuch as the trial court promised plaintiff he could appeal issues that were not cognizable on appeal.  Id., at *1 (Sacramento County Superior Court Case No. 07F09116).

At the time plaintiff's conviction was reversed, plaintiff was incarcerated at Avenal State Prison.  In the amended complaint, plaintiff alleges the following.  On November 13, 2009, defendant Hartley was notified by the Sacramento Superior Court that on November 20, 2009, the Sacramento County Sheriff's Department would transport plaintiff to the Sacramento County Jail for plaintiff's court proceedings.  On November 19, 2009, plaintiff was

directed by Sgt. Cruz to bring all of plaintiff's property to receiving and release as plaintiff was being transferred to the Sacramento County Jail.  Plaintiff reported with his property to receiving and release on November 19, 2009, but was informed that he would be transferred on November 20, 2009.  Plaintiff returned to receiving and release on November 20, 2009, apparently having left his property behind the day before.  When plaintiff arrived, Sgt. Cruz informed plaintiff that his property was packed and taped, and would be stored until plaintiff returned from court. Plaintiff objected, noting that plaintiff's conviction had been reversed, and that plaintiff was now a pretrial detainee transferring into the custody of the Sacramento County Jail.  Sgt. Cruz countered that plaintiff was only "out to court," and that plaintiff was confused about not being a ward of the Department of Corrections.  Plaintiff explained his need for his legal materials due to his pending civil cases, as well as for defending himself in the re-opened criminal case.  Despite plaintiff's protestations, plaintiff was transferred without his legal materials.

Plaintiff also appealed to the Sacramento County transport officer, who attempted, unsuccessfully, to retrieve plaintiff's legal materials from Avenal receiving and release.  The officer suggested plaintiff ask the court to appoint counsel to assist in obtaining return of the legal materials.

On November 23, 2009, plaintiff informed the Sacramento County Superior Court judge that plaintiff's legal materials were withheld by Avenal personnel, and that without them, plaintiff could not mount an effective defense.  On this ground, the superior court allowed plaintiff to withdraw his Faretta[1] motion, and appointed counsel.  On November 30, 2009, plaintiff advised appointed defense counsel that plaintiff intended to represent himself in the criminal proceedings, but that "until he received his legal materials, plaintiff would need counsel's representation [to help obtain] the legal materials from Avenal State Prison."  (Dkt. No. 15 at 7.)  Plaintiff alleges defense counsel wrote a letter to defendant Hartley, instructing him

---

[1]  Pursuant to Faretta v. California, 422 U.S. 806, 821 (1975), criminal defendants are entitled to waive their Sixth Amendment right to counsel and represent themselves.

1  to send plaintiff's legal materials to plaintiff in the Sacramento County Jail, or to defense

2  counsel's law office.  However, plaintiff did not receive his legal materials, and defendant

3  Hartley did not comply with defense counsel's request.  Plaintiff provides a list of documents he

4  needed from his legal materials to defend himself in the criminal prosecution, which included

5  copies of the preliminary hearing transcript from the first hearing, and research he had performed

6  to support a motion to suppress evidence in the pending criminal proceedings.  (Dkt. No. 15 at 2-

7  3.)

8        It appears that following trial of the charges in 07F09116 in March and April of

9  2010, plaintiff was sentenced on May 21, 2010.[2]  Plaintiff was returned to Avenal State Prison on

10 June 10, 2010.  (Dkt. No. 1 at 7.)

11       i. Legal Standards

12       Prisoners have a constitutional right of access to the courts.  See Lewis v. Casey,

13 518 U.S. 343, 350 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977).  In Sands v. Lewis, 886

14 F.2d 1166 (1989), the Ninth Circuit divided such cases into two categories:  (1) Those which

15 assert inadequate law libraries or alternative sources of legal knowledge sufficient to prepare a

16 suit, and (2) all others (id. at 1171), including interference claims.  As to the second category, the

17 court required proof of "actual injury" to state a claim.  Id.  The court did not require actual injury

18 for the first category, id., but that part of the holding was overruled by Lewis v. Casey, 518 U.S.

19 343, 350-55 (1996).[3]  In short, whether a prisoner's claim is that a prison law library is

20 inadequate, or that his access to the law library is inadequate, or that official action somehow

21 blocked or interfered with his access to the court, he must allege "actual injury."

22

23       [2]  This information was obtained from the Sacramento County Superior Court's Index
   Search System, https://services.saccourt.com/indexsearchnew/CaseNumberList.aspx?

24 SearchValues=LANGSTON,WALTER,SHANE,1761189, accessed on May 22, 2012.

25       [3]  In other words, Sands was overruled by Lewis to the extent that it did not require actual
   injury when a prisoner alleges inadequate assistance.  Lewis, 518 U.S. at 351.  But the distinction
26 between assistance and interference claims "remains good law."  Silva v. DiVittorio, 658 F.3d
   1090, 1102, n.8 (9th Cir. 2011).

In the interference line of cases, the Supreme Court has "held that the First Amendment right to petition the government includes the right to file other civil actions in court that have a reasonable basis in law or fact." Snyder [v. Nolen, 380 F.3d 279, 290 (7th Cir. 2004)] [internal citations omitted]. This right does not require prison officials to provide affirmative assistance in the preparation of legal papers, but rather forbids states from "erect[ing] barriers that impede the right of access of incarcerated persons." John L. [v. Adams, 969 F.2d 228, 235 (6th Cir. 1992); Snyder, 380 F.3d at 291 ("The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference"). Thus, aside from their affirmative right to the tools necessary to challenge their sentences or conditions of confinement, prisoners also have a right, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process, "to pursue legal redress for claims that have a reasonable basis in law or fact." Snyder, 380 F.3d at 291 (citing Johnson v. Atkins, 999 F.2d 99, 100 (5th Cir. 1993)).

We have recognized that prisoners' First and Fourteenth Amendment rights to access the courts without undue interference extend beyond the pleading stages. See, e.g., Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989) ("a defendant is deprived of due process if prison authorities confiscate the transcript of his state court conviction before appeal"); DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966) ("When the efforts of a state prisoner to obtain an available appellate review of his conviction are frustrated by the action of penal officials, there has been a violation of the Due Process Clause of the Fourteenth Amendment"). Indeed, before the Supreme Court's decision in Bounds, when the right of access to the courts was understood only to guarantee prisoners a right to be free from interference, we held that the right to access the courts included "the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence *or prosecute* court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters." Hatfield v. Bailleaux, 290 F.2d 632, 637 (9th Cir. 1961) (emphasis added).

Silva v. DiVittorio, 658 F.3d 1090, 1102-03 (9th Cir. 2011).[4] Thus, "prisoners have a right under

---

[4] In Silva, the prisoner alleged that defendants repeatedly transferred him between different prison facilities in order to hinder his ability to litigate his pending civil lawsuits, and seized and withheld all of his legal files. Id. at 1104. In the case below, the district court found that Silva's right of access to the courts ended once he brought the petition or complaint to court, and did not include a "right to discover such claims or even to litigate them effectively once filed with a court." Id. at 1101. The district court "concluded that because Silva's allegations related to his ability to effectively litigate his cases beyond the pleading stage, Silva failed to state a claim." Id. However, the Ninth Circuit disagreed, finding that because Silva pled facts

the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials." Id. at 1103.

ii.  Screening

Here, plaintiff alleges that defendants' refusal or failure to transfer plaintiff's legal materials from Avenal State Prison to plaintiff at the Sacramento County Jail interfered with plaintiff's access to the court, as well as with his ability to represent himself in the pending criminal prosecution in violation of the Sixth Amendment. Thus, plaintiff may be able to state a cognizable claim for violation of his right to access to the court and the Sixth Amendment.

However, in Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id., at 486-87. In Heck, the plaintiff did not allege he was denied access to the courts but rather claimed that state prosecutors and police had destroyed evidence. Id. at 478-79.

---

demonstrating active interference with his access to the courts, and alleged that several of his pending suits were dismissed, demonstrating actual injury, the dismissal of Silva's access to courts claim must be reversed. Id. at 1103-04.

1          Plaintiff relies on Banks v. Sheahan, 914 F. Supp. 231 (N.D. Ill. 1995).  Although

2    the court in Banks did not find the claim Heck-barred, the court found that the prisoner did not

3    suffer an actual detriment or injury, and that the prisoner had adequate access to the courts

4    through appointed counsel.  Id. at 234-36.  Moreover, in a subsequent case, the Seventh Circuit

5    discussed the interplay between Heck and access to court claims, and found that if the injury in

6    question is losing the underlying case, then Heck applies.  Nance v. Vieregge, 147 F.3d 589, 591

7    (7th Cir. 1998); but see Lueck v. Wathen, 262 F. Supp. 2d 690 (N.D. Tex. 2003) (not resolving

8    Heck question when officials seized documents that prevented plaintiff from filing a habeas

9    petition).  Because Nance was attempting to withdraw his guilty plea, his access to the courts

10   claim necessarily implicated his conviction.  Id., 147 F.3d at 51.

11          Here, plaintiff's factual allegations concerning the legal materials withheld pertain

12   to his efforts to renew a motion to suppress which was apparently denied in the prior criminal

13   proceeding.  These allegations suggest that a ruling on plaintiff's claim would implicate

14   plaintiff's subsequent criminal conviction.  See Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir.

15   2002) (restricted telephone access to counsel in violation of Sixth Amendment necessarily

16   implicated subsequent conviction); Jenkins v. Bartley, 2008 WL 4058088 (E.D. Cal. Aug. 28,

17   2008) (prisoner alleged inability to pursue habeas actions related to the then-pending criminal

18   proceedings or to assert right to proceed pro se; court held that finding prisoner prevented from

19   asserting Faretta right to self-representation or to challenge some phase of the criminal

20   prosecution would necessarily implicate validity of underlying conviction.)[5]  Thus, depending on

21   plaintiff's factual allegations supporting his specific injury, this claim may be barred by Heck.

22   Plaintiff is granted leave to file a second amended complaint in order to clearly allege the actual

23   injury he claims.

24   ////

25

26          [5]  A copy of this opinion from westlaw.com is appended.

1        B.  Interference with Other Civil Cases

2        The focus of plaintiff's fourteen page amended complaint is the deprivation

3   allegedly impacting plaintiff's ability to defend himself in the criminal prosecution, as discussed

4   above.  However, plaintiff also alleges he was deprived of "his variety of writings, personal

5   records dealing with civil complaints, and writ [of] habeas corpus."  (Dkt. No. 15 at 3.)

6   Specifically, plaintiff states he needed his legal materials for the following three cases:  2:10-cv-

7   2196 EFB; 2:10-cv-2715; and 2:09-cv-0992 LKK KJM.  (Dkt. No. 15 at 6.)  Plaintiff claims that

8   "he tried to draft the motions and civil complaints, but without his notes and supporting material,

9   he was not able to draft an adequate complaint or motion."  (Dkt. No. 15 at 12.)  Plaintiff states

10  he did not have the "exact date and time of the event and his racial profiling and prosecutorial

11  misconduct claims" or other supporting information.  (Id.)

12        Plaintiff's vague allegations as to these cases fail to state a cognizable access to

13  the courts claim.  Moreover, the court reviewed these cases and it does not appear that plaintiff

14  can allege actual injury in any of them.  In Langston v. Finn, 2:10-cv-2196 EFB P (E.D. Cal.),

15  plaintiff was able to file his civil rights complaint on August 16, 2010.  Plaintiff filed an

16  amended complaint on November 29, 2010, alleging a due process violation based on plaintiff's

17  erroneous release from prison which he alleged deprived him of good time credits while he was

18  erroneously out of custody; the case was ultimately dismissed based on plaintiff's failure to state

19  a cognizable civil rights claim.  (Id., Dkt. No. 17.)

20        In Langston v. Enkoji, 2:10-cv-2715 GGH P (E.D. Cal.), plaintiff filed his civil

21  rights complaint on October 6, 2010, challenging the circumstances surrounding his 2007 arrest,

22  including an allegation of racial profiling, and events at a May 2008 discovery hearing held

23  during subsequent criminal proceedings.  Plaintiff's complaint was dismissed with leave to

24  amend inasmuch as plaintiff's first claim was barred under Heck v. Humphrey, and the

25  prosecutor alleged to have engaged in misconduct during the discovery hearing was entitled to

26  prosecutorial immunity.  (2:10-cv-2715 GGH P, Dkt. No. 10.)  In his amended complaint,

10

plaintiff did not reallege his prior claims, but instead alleged new claims of prosecutorial

misconduct, and claimed his former defense attorney did not turn over all discovery materials as

soon as plaintiff wanted.  (Id., Dkt. No. 19 at 4.)  On April 26, 2011, plaintiff's amended

complaint was dismissed, and the action was terminated.  (Id. at 5.)

          In these two civil rights cases, plaintiff was able to file his claims; neither case

was rejected as time-barred.  The dismissal of these cases was not based on plaintiff's failure to

adduce evidence or provide cogent arguments, but rather on his failure to state cognizable civil

rights violations.  In addition, because plaintiff was returned to Avenal State Prison by June 10,

2010, it appears plaintiff had possession of his legal materials when he filed these two civil rights

cases.  Plaintiff "must demonstrate that a non-frivolous legal claim has been frustrated or

impeded."  Jenkins, at *3.  While the filings may have been delayed, plaintiff alleges no specific

injury resulting from any delay.  Review of these cases does not indicate that plaintiff's ability to

litigate effectively was actually hindered by the alleged deprivation of legal materials from

November 20, 2009, through June, 2010.  Thus, it does not appear that plaintiff can demonstrate

actual injury under Lewis v. Casey based on the alleged deprivation of legal materials in 2009.

          Finally, in Langston v. Finn, 2:09-cv-0992 LKK KJM P, plaintiff filed a petition

for writ of habeas corpus on April 13, 2009, challenging his 2001 conviction for which he was

re-sentenced in 2005.  (Id.)  The petition was found to be time-barred because the statute of

limitations period expired on May 10, 2007.  (Id., Dkt. No. 23 at 4.)  Even with equitable tolling

from May 10, 2007, through November 26, 2007, the court found that the limitations period

would expire on December 27, 2007, long before the 2009 petition was filed.

          First, petitioner filed the petition on April 13, 2009, before he was deprived of his

legal materials in November of 2009.  Respondent filed a motion to dismiss on February 10,

2010, and plaintiff timely opposed the motion on March 23, 2010, while housed in the

Sacramento County Jail.  (Id., Dkt. No. 21.)  In his opposition, plaintiff did not file a request for

extension of time, claiming he needed access to legal materials, or mention a lack of access to his

1   legal materials.  (Id.)  On June 16, 2010, plaintiff filed a notice of change of address stating he

2   was housed at Avenal State Prison on June 10, 2010.  (Id., Dkt. No. 22.)  On July 13, 2010,

3   plaintiff filed objections from Avenal, and again did not mention an inability to access his legal

4   materials.  (Id., Dkt. No. 24.)  Thus, the record in plaintiff's habeas case does not reflect that the

5   alleged deprivation of legal materials hindered plaintiff's ability to pursue this case.

6          Second, the resolution of plaintiff's habeas case demonstrates that the deprivation

7   of legal materials did not cause plaintiff actual injury.  As noted above, the statute of limitations

8   period expired in 2007.  Plaintiff did not file his habeas petition until April 13, 2009.  Thus, the

9   statute of limitations period expired long before plaintiff was deprived of his legal materials in

10  2009; therefore, plaintiff did not suffer an actual injury in his habeas case, 2:09-cv-0992 LKK

11  KJM P.

12         Accordingly, plaintiff should not renew his access to court claims in connection

13  with the three civil cases discussed above.

14  V.  Conclusion

15         For all of the above reasons, plaintiff's amended complaint is dismissed, and

16  plaintiff is granted leave to file a second amended complaint.

17         If plaintiff chooses to file a second amended complaint, plaintiff should use the

18  court's complaint form, and may append handwritten pages to articulate the facts and claims, if

19  needed.  Plaintiff should paginate his filing in order, for example, from pages 1 through 14.

20  Plaintiff must clearly identify the individuals named as defendants.

21         In addition, plaintiff is informed that the court cannot refer to a prior pleading in

22  order to make plaintiff's second amended complaint complete.  Local Rule 220 requires that an

23  amended complaint be complete in itself without reference to any prior pleading.  This

24  requirement is because, as a general rule, an amended complaint supersedes the original

25  complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second

26  amended complaint, the original pleading no longer serves any function in the case.  Therefore,

in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's amended complaint is dismissed.

2. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a. The completed Notice of Amendment; and

b. An original and one copy of the Second Amended Complaint. Plaintiff's second amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the second amended complaint must bear the docket number assigned this case and must be labeled "Second Amended Complaint"; failure to file a second amended complaint in accordance with this order may result in the dismissal of this action.

3. The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint.

DATED:   May 29, 2012

_Kendall J. Newman_
_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

lang3191.14

1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WALTER SHANE LANGSTON,

11           Plaintiff,                         No. 2:10-cv-3191 KJN P

12       vs.

13
     WARDEN JAMES HARTLEY,
14   SGT. CRUZ, et al.,

15           Defendants.                        <u>NOTICE OF AMENDMENT</u>

16
     _____/
17
             Plaintiff hereby submits the following document in compliance with the court's
18
     order filed _____:
19
             _____        Second Amended Complaint
20

21   DATED:

22

23                                    _____
                                      Plaintiff
24

25

26

Westlaw.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

**H**

Only the Westlaw citation is currently available.

United States District Court,

E.D. California.

Jamal Albert JENKINS, Plaintiff,

v.

BARTLEY, Defendants.

No. CIV S-05-358 LKK KJM P.

Aug. 28, 2008.

West KeySummary**Civil Rights 78** 🗝 **1094**

78 Civil Rights

    78I Rights Protected and Discrimination Prohibited in General

        78k1089 Prisons

        78k1094 k. Access to Courts. Most Cited Cases

    Inmate's § 1983 claim that his First Amendment right of access to the courts was violated when he was unable to go the jail's law library was barred by *Heck v. Humphrey*. The inmate claimed he was not able to pursue habeas actions related to the then-pending criminal proceedings or assert his right to proceed pro se in the criminal case against him. If the court found that plaintiff was prevented from asserting his *Faretta* right to self-representation or to challenge some phase of the prosecution through a pretrial habeas petition, that finding would have necessarily implied the invalidity of the underlying conviction. U.S.C.A. Const.Amend. 1; 28 U.S.C.A. § 2254; 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

Jamal A. Jenkins, Soledad, CA, pro se.

Robert L. Chalfant, Wendy M. Motooka,

Randolph Cregger & Chalfant LLP, Sacramento, CA, for Defendants.

*FINDINGS & RECOMMENDATIONS*

KIMBERLY J. MUELLER, United States Magistrate Judge.

    **\*1** Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983, alleging that defendant Riley denied him access to the law library from February through June 2004, while he was a pretrial detainee at Sacramento County Jail, and that defendant Bartley removed materials from a letter plaintiff mailed to his mother. Defendants have moved for summary judgment.

I. *Summary Judgment Standards Under Rule 56*

    Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

    Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

interrogatories, and admissions on file.' " *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987).

*\*2 In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed.R.Civ.P. 56(c). The evidence of the opposing party is to be believed. *See Anderson,* 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita,* 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (citation omitted).

On May 7, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland,* 154 F.3d 952, 957 (9th Cir.1998) (en banc), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

(1999), and *Klingele v. Eikenberry,* 849 F.2d 409 (9th Cir.1988).

II. *Access To The Court*

In his amended complaint, plaintiff alleges that his First Amendment right of access to the courts was violated when he was unable to go the jail's law library. Defendant Riley argues that this cause of action is barred by *Heck v. Humphrey,* that plaintiff is unable to show actual injury, and that she is entitled to qualified immunity.

A. *Facts*

Plaintiff was arrested in January 2004 and booked into Sacramento County Jail, where he remained through his conviction in October 2006. Deposition of Jamal Jenkins (Jenkins Depo.) at 9:23-10:1, 12:1-3.<sup>FN1</sup> Plaintiff was represented initially by Deputy Public Defender Paula Weikel, but in February 2004, he retained Charles Bloodgood. *Id.* at 19:2-3 & 21-23, 20:16, 21:16. Petitioner was not satisfied with this lawyer's performance and so sought access to the law library beginning in February and continuing through June 2004. Amended Complaint (Am.Compl.)<sup>FN2</sup> at 3-4; Opposition (Opp'n), Ex. B at 8-9 (plaintiff's requests for law library access). In May 2004, he discharged Attorney Bloodgood. Jenkins Depo. at 20:23-24. Plaintiff proceeded pro se from September through December 2004 and thereafter was represented by Attorney Miller and Attorney Bowman. *Id.* at 23:10-12, 24:18-22. He did not represent himself during the period of time he alleges that defendant Riley denied him access to the law library. *Id.* at 22:23-23:4. Jail policies provided that inmates with pro se status were given priority access to the law library. Opp'n, Ex. B at 1-2 (Riley's response to request for admissions no. 8) & 3 (jail policy).

FN1. Defendants have attempted to authenticate portions of the deposition through the declaration of counsel; this

is improper. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 774 (9th Cir.2002) (requirements for authenticating a portion of a deposition). However, defendants have lodged the deposition transcript, properly certified, to which the court refers.

FN2. Although this pleading was not signed under the penalty of perjury or otherwise verified, defendants rely on its averments in their statement of undisputed facts.

**\*3** Plaintiff asserts that had he been given access to the law library during this critical phase of the prosecution against him, he could have "read law documents that would have allowed me to represent myself," prepared habeas petitions and obtained a better outcome. Jenkins Depo. at 15:5-8, 16:23-17:20.

Plaintiff was convicted on October 5, 2006. At the time his deposition was taken and the motion for summary judgment was filed, his appeal of the conviction was pending. Jenkins Depo. at 12:3-6, 13:11-13; Motion For Summary Judgment, [First] Request For Judicial Notice. On May 13, 2008, the Court of Appeal for the Third Appellate District affirmed plaintiff's conviction but directed the Superior Court to correct the minute order concerning plaintiff's sentence. *See* Second Request for Judicial Notice (opinion in *People v. Jenkins,* C051852).

B. *Access To The Court and Heck v. Humphrey*

In *Heck v. Humphrey,* the United States Supreme Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that *has* not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the plaintiff did not allege he was denied access to the courts but rather claimed that state prosecutors and police had destroyed evidence. *Id.* at 478-79. In contrast, plaintiff's claims in this case do not directly implicate his conviction; instead, he argues that his First Amendment right of access to the court was abridged when he was denied law library access and so was unable to research and understand his right to proceed in pro per and to take other actions to challenge and supplement the perceived inadequacies of counsel's performance.

Although an inmate has a constitutionally protected right of meaningful access to the courts, there is no freestanding constitutional right to law library access for prisoners. *Bounds v. Smith,* 430 U.S. 817, 820-21, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see Lewis v. Casey,* 518 U.S. 343, 350-51, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Instead, law library access serves as one means of ensuring the constitutional right of access to the courts. *See id.* at 351. A prisoner claiming that his right of access to the courts has been violated due to inadequate library access must show that: 1) access was so limited as to be unreasonable, and 2) the inadequate access caused actual injury. *Vandelft v. Moses,* 31 F.3d 794, 797 (9th Cir.1994). A prisoner cannot make conclusory declarations of injury, but instead must demonstrate that a non-frivolous legal claim has been frustrated or impeded. It is not enough for an inmate to show some sort of denial: he must also show "actual injury" from the denial or delay of services. The Supreme Court has described the actual injury requirement:

*4 [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis,* 518 U.S. at 351.

Two cases from the Seventh Circuit have discussed the interplay between Heck and access to the court.[FN3] In *Nance v. Vieregge,* 147 F. 3d 589 ( 7th Cir. 1998), the inmate plaintiff was to be transferred from one prison to another, which was closer to the court that was going to hear his motion to withdraw his guilty plea. The property clerk told plaintiff he could not take his legal documents, which included "**photocopies of**

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

**cases Nance wanted to have handy when arguing in support of his motion_____** *Id.* **at 590.** The warden assured plaintiff that his legal materials would follow him. They did not and plaintiff eventually filed suit. The court observed:

> FN3. The cases cited by defendant are not apposite, for they concern suits attacking 3 some part of the criminal proceedings directly rather than through the lens of an access to courts claim.

**If the injury in question is losing the underlying case, then *Heck* ... comes into play.... Nance pleaded guilty; his motion to withdraw the plea was denied; and although the prison's unconstitutional hindrance of his efforts to withdraw the plea ( if that is what occurred) would be a good ground for a new hearing on the motion to set aside the plea, it would not establish that Nance is entitled to damages for wrongful incarceration-not unless he went to trial and was acquitted, or the invalidity of his incarceration was established in some other fashion. The holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner in Nance's position must have the judgment annulled before damages are available for wrongful imprisonment**.

*Id.* **at 591.**

A slightly different situation gave rise to the decision in *Hoard v. Reddy,* 175 F.3d 531 (7th Cir.1999). In that case, plaintiff sought damages from various county officials, alleging they hindered his ability to litigate a state habeas action. *Id.* at 532. The Court of Appeals upheld the district court's dismissal of the action and ruminated about the intersection of *Heck* and *Lewis:*

To get damages you must prove you lost something of monetizable value; but this is not required for an injunction-indeed, the inadequacy of one's damages remedy is normally a prerequisite to injunctive relief. If a prisoner whose access to the courts is being blocked in violation of the Constitution cannot prove that, had it not been for the blockage, he would have won his case or at least settled it for more than $0 (the point emphasized in *Lewis* ), he cannot get damages but he can get an injunction. In a case such as *Heck,* where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated. But suppose that he is complaining instead about being hindered in his efforts to rectify illegal prison conditions. Since it is well known ... that colorable claims have a settlement value, the prisoner may be able to show that had he not been hindered in prosecuting his claim he might have gotten some money for it, even if it wasn't a sure winner. He has to show that the claim was colorable and so had some value in the litigation market but he does not have to establish the validity (as distinct from the colorableness) of the claim as a precondition to obtaining damages. In the setting of *Heck,* there is nothing corresponding to a colorable claim; either the conviction was invalid, in which case the defendant suffered a legally cognizable harm, or it is not and he did not.

**\*5** *Id.* at 533-34; *but see* *Lueck v. Wathen,* 262 F.Supp.2d 690 (N.D.Tex.2003) (not resolving *Heck* question when officials seized documents that prevented plaintiff from filing a habeas petition).

In this case, unlike **Nance** and *Hoard,* plaintiff alleges he was stymied in his efforts to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

challenge aspects of the then-pending prosecution and his lawyer's performance and to assert his right of self-representation. Despite these differences, the court finds that *Heck* applies and bars the claim, for reasons explained below.

In *Valdez v. Rosenbaum,* 302 F.3d 1039 (9th Cir.2002), the plaintiff alleged that while he was a federal pretrial detainee held by arrangement in a state facility, jail officials and the Assistant United States Attorney prosecuting him restricted his access to the telephone for several weeks to prevent him from warning his confederates in a drug conspiracy that an indictment had been filed against them. During this restriction, plaintiff was allowed to have a daily telephone call with his lawyer, but had to submit a written request to do so. *Id.* at 1042. After his conviction, he filed a civil rights action, alleging "the requirement that he obtain permission to telephone his attorney made it practically impossible to have a telephone conversation with his attorney," and claiming a Sixth Amendment violation. *Id.* at 1049. The Ninth Circuit refused to consider the claim, finding it *Heck*-barred because it would necessarily imply the invalidity of his later conviction. *Id.*

Although Valdez challenged the telephone restriction on Sixth Amendment grounds, the logic applies to plaintiff's access-to-the-courts claim, as recognized by *Nance* and *Hoard.* Here, plaintiff claims he was not able to pursue habeas actions related to the pending criminal proceedings or assert his right to proceed pro se in the criminal case against him. If this court were to find that plaintiff was prevented from asserting his *Faretta*[FN4] right to self-representation or to challenge some phase of the prosecution through a pretrial habeas petition, that finding would necessarily imply the invalidity of the underlying conviction. Defendant is entitled to summary judgment. *See*

*Sheldon v. Hundley,* 83 F.3d 231, 234 (8th Cir.1996) (when First Amendment claims are "so entangled with the propriety of the disciplinary result," they are barred by *Heck* ).

> FN4. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

C. *Actual Injury*

Defendant Riley also asserts plaintiff cannot show injury in fact from the library restrictions because he was represented by counsel during the relevant time period. As the Supreme Court recognized in *Lewis,* 518 U.S. at 351, "actual injury" is a constitutional prerequisite to establishing a claim based on the denial of access to the courts. Plaintiff counters that counsel's ineffectiveness undercuts defendant's argument.

In *Bounds,* 430 U.S. at 830-31, the Supreme Court recognized that correctional officials may provide inmates access to law libraries or to people trained in the law as a means of satisfying the inmates' right of access to the courts. Accordingly, the appointment of counsel or the provision of access to retained counsel may be a means of satisfying the state's obligation to provide access to the courts. *Wilson v. Blankenship,* 163 F.3d 1284, 1291 (11th Cir.1998) (no injury in fact when plaintiff was represented by appointed counsel in criminal proceedings); *Ching v. Lewis,* 895 F.2d 608 (9th Cir.1990) (right of access to the court includes right to contact attorney); *Davis v. Milwaukee County,* 225 F.Supp.2d 967 (E.D.Wis.2002) (no injury from inadequate law library when plaintiff had lawyer in criminal proceedings).

**\*6** Plaintiff argues, however, that his retained counsel's ineffectiveness means that counsel's representation could not substitute for plaintiff's own access to the law library. Opp'n at

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

10. The Second Circuit has rejected this argument.

In *Bourdon v. Loughren,* 386 F.3d 88 (2d Cir.2004), the plaintiff argued he was denied access to the courts in connection with pending criminal charges when the defendants refused to provide him with materials he requested, particularly materials that would have allowed him to prepare a motion to dismiss the charges and a motion to discharge counsel. He further argued that counsel was ineffective and so could not satisfy the state's obligation to provide him with access to the courts.

The Court of Appeals rejected plaintiff's argument. It found that the standard of attorney effectiveness was not coextensive with the *Bounds* standard of adequate assistance from those trained in the law. *Bourdon,* 386 F.3d at 96-97. The court said:

[T]he term "adequate" modifying "assistance from persons trained in the law" does not incorporate the effectiveness inquiry pertinent to the Sixth Amendment but instead refers to the capability of qualified and trained persons-rather than legal amateurs and laypersons-to provide, in dispensing legal assistance, access to the courts. Because attorneys, by definition, are trained and qualified in legal matters, when a prisoner with appointed counsel claims that he was hindered by prison officials in his efforts to defend himself ..., he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts, not that he was denied effective representation in the court.

*Id.* at 98; *see also Schrier v. Halford,* 60 F.3d 1309, 1314 (8th Cir.1995) (citations omitted).

As in *Bourdon,* plaintiff has not shown that the jail prevented him from contacting counsel or hampered his ability to pursue claims through counsel. Accordingly, he has not demonstrated injury in fact.

III. *Interference With The Mail*

Plaintiff contends "a lengthy legal brief chronicling police misconduct" and other materials he mailed from the jail were missing from the envelope when plaintiff's mother received it. Am. Compl. at 8-9. Defendant Bartley counters that this claim is barred by collateral estoppel and that plaintiff cannot provide any proof that defendant Bartley removed the materials from the envelope.

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff,* 52 F.3d 264, 265 (9th Cir.1995) (per curiam). "[T]he addressee as well as the sender of direct personal correspondence derives from the First and Fourteenth Amendments a protection against unjustified governmental interference with the intended communications." *Procunier v. Martinez,* 416 U.S. 396, 408-09, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

A. *Facts*

**\*7** Sacramento County Jail inmates put their outgoing mail, unsealed, in a slot in their "pod"-a grouping of cells-unsealed. Jenkins Depo. at 40:7-13. Around 8:30 p.m. on July 23, 2004, plaintiff put two envelopes addressed to his mother in the pod mailbox; although both were delivered, one had items missing when his mother received it. Jenkins Depo. at 40:15-24, 41:3-5. Among the missing documents were a statement about police misconduct that plaintiff had written and a letter from the Sheriff's Department; plaintiff hoped to use the statement

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

as support for a habeas petition during trial. Jenkins Depo. at 44:8-12, 46:1-3 & 14-21, 75:22-76:12. Defendant Bartley processed the mail from plaintiff's pod the evening of July 23rd. Jenkins Depo. 53:20-21, 59:5.

Defendant Bartley agrees that while employed at the Sacramento County Main Jail facility, his duties included processing inmate mail on the third floor. MSJ, Declaration of Mark Bartley (Bartley Decl.) ¶ 4. He retrieved mail from the mail slots, separated it by envelope size, and put the groups into the second floor mailbox for further processing; he did not seal inmates' mail and did not inspect the contents of the mail. Id. ¶¶ 5-6; Opp'n, Ex. C at 10 (No. 34). According to the Inmate's Handbook, after mail is inspected, "officers shall seal the letters and process them for mailing within 24 hours." Opp'n, Ex. C at 7.

Bartley did not remove any material from any inmate's mail at any time. Bartley Decl. ¶ 7.

In July 2005, petitioner filed a habeas action in Sacramento County Superior Court, No. 05F06677, alleging that in April 2005 certain materials his mother claimed to have mailed to him at the jail were not in the envelopes when he received them; that a legal brief was taken from an envelope he addressed to his mother on June 22, 2004; and that various other pieces of mail were delayed or withheld. MSJ, Ex. C at 5, 13, 15, 50.

The Superior Court denied the petition:

Petitioner contends that jail officials opened mail and removed some website print-outs that were sent to him in two envelopes, that they removed items from another envelope that he sent.... Jail officials say they didn't remove anything from the envelopes....

Unfortunately [petitioner] cannot establish a chain of control over this mail. Similarly, he

cannot establish a chain of control over his outgoing mail_____

In these circumstances, the court cannot provide any relief. There is no policy to evaluate, and no documents being held by jail officers_____

MSJ, Ex. C at 2-3. The court did not hold a hearing on this petition. Jenkins Depo. 63:21-25. Petitioner pursued these issues, unsuccessfully, in the Court of Appeal and the California Supreme Court. Jenkins Depo. 65:5-9, 15-19.

B. *Collateral Estoppel*

The United States Supreme Court has observed:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

**\*8** *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (internal citations and quotations omitted). The doctrines of collateral estoppel and res judicata apply in civil rights actions under 42 U.S.C. § 1983 when the constitutional claim is based on the same alleged act or omission that was the subject of a state court action, and when the state courts would give preclusive effect to its judgment. *Allen v. McCurry,* 449 U.S. 90,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

104-05, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Migra v. Warren City School District Board,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Valley Wood Preserving, Inc. v. Paul,* 785 F.2d 751, 753 (9th Cir.1986). A judgment in a state habeas action may preclude further litigation of issues in a federal civil rights action. *Sperl v. Deukmejian,* 642 F.2d 1154, 1155 (9th Cir.1981); *Silverton v. Department Of The Treasury,* 644 F.2d 1341, 1346-47 (9th Cir.1981); *see also Harris v. Jacobs,* 621 F.2d 341, 343-44 (9th Cir.1980) (state habeas determination that the prison had provided constitutionally adequate medical care barred his § 1983 action on the same ground, but did not preclude his Fourteenth Amendment claim of entitlement to consult outside doctor).

In California,

collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior [proceeding].

*People v. Sims,* 32 Cal.3d 468, 484, 186 Cal.Rptr. 77, 651 P.2d 321 (1982), *superseded on other grounds by statute,* Cal. Vehicle Code § 13353.2 (internal quotation omitted); *see also Maldonado v. Harris,* 370 F.3d 945, 952 (9th Cir.2004), *cert. denied sub nom. Kempton v. Maldonado,* 544 U.S. 968, 125 S.Ct. 1725, 161 L.Ed.2d 615 (2005) (discussing California's "primary rights" doctrine of claim preclusion).

There is no dispute that plaintiff was the petitioner in the state habeas proceedings or that the action proceeded to a final judgment; in his deposition, plaintiff acknowledged that the California Supreme Court denied relief on this claim. Jenkins Depo. at 65:15-19. There is a slight discrepancy regarding the date plaintiff put the letter in the pod mailbox: in the amended complaint, plaintiff alleges it was on July 23, 2004, while in the state habeas petition, he claims it was on June 22, 2004. Am. Compl. at 8; MSJ, Ex. C at 13. However, in an attachment to the state habeas petition, plaintiff describes the contents of the letter to his mother as including a statement about police misconduct, a complaint to the Citrus Heights police department, a letter from the Internal Affairs Department of the Sheriff's office and a letter from the Sacramento County Law Library. MSJ, Ex. C at 51. In his deposition, he described the documents in the letter at issue in this case as including a statement chronicling police harassment, a letter from the Sacramento County Law Library, a letter from the Citrus Heights Police Department, and a letter from the Sacramento County Sheriff's Department. Jenkins Depo. at 45:11-18; 46:14-21. The court finds that the issue raised in the instant complaint was included in the issues presented in the state habeas proceedings.

**\*9** Plaintiff argues that the state proceedings should not be given preclusive effect because he never received a hearing on the petition challenging the loss and delay of his mail. Opp'n at 15. However, the issue raised here was "actually litigated" in the state habeas action because it was *"properly raised,* by the pleadings or otherwise, and [was] submitted for determination, and [was] *determined.... A determination may be based on a *failure of proof* ...." *Sims,* 32 Cal.3d at 484, 186 Cal.Rptr. 77, 651 P.2d 321 (emphases in original; internal quotations, citations omitted). In this case, too, the Superior Court determined the issues raised in plaintiff's habeas action based on a failure of proof that anyone in the jail had tampered with plaintiff's mail.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)

(Cite as: 2008 WL 4058088 (E.D.Cal.))

Accordingly, because California would give the habeas determination preclusive effect, plaintiff's civil rights action based on mail tampering is similarly barred.

C. *Other Matters*

Plaintiff argues that defendant Bartley's declaration should be rejected because of Bartley's general animus against inmates and because of the jail manual, which requires that mail be sealed within twenty-four hours of inspection.

Even if plaintiff's claim that Bartley disliked inmates could potentially preclude summary judgment, it is based on an unsworn letter from inmate Norman Whitehorn, who claims that Bartley handled him roughly. Opp'n, Ex. C at 15. The court will not consider this letter. *See* United States v. Ritchie, 342 F.3d 903, 909 (9th Cir.2003). Nor do the contents of the jail handbook preclude summary judgment: the handbook says nothing about who is responsible for sealing the mail and so does not create a disputed issue of material fact.

IT IS THEREFORE RECOMMENDED that defendants' motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153

(9th Cir.1991).

E.D.Cal.,2008.

Jenkins v. Bartley
Not Reported in F.Supp.2d, 2008 WL 4058088 (E.D.Cal.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.